We will hear argument next in No. 241612, RFCyber v. Squires. Mr. Cowell. Thank you. May it please the Court, and good morning, Your Honors. The issue before the Court here is whether the larracy software that was located on a server could somehow satisfy the claim limitation ePIRS maintained locally in the mobile device. Now, that limitation was itself construed in two parts. The first part, ePIRS, was construed as software that stores electronic financial information in a local device. Now, whether larracy has software that stores that financial information in a local device is not at issue on this appeal. The Court found that it did, and we are challenging that here. What we are challenging is the second part, which is maintained locally in the mobile device. It was shown in the evidence below to the Board that larracy software that stores information is located on the TMS server. The petitioner, Apple, did not challenge that. They, in fact, said that the payment account management system portion of the TMS server updates and synchronizes the account balances. That's what is doing the storing of the electronic financial information. It is that server part. The Board did not address this in any full manner. It conflated the two requirements and determined that because information is stored locally, the software storing that information, which must be maintained locally, also met that limitation. Now, you never asked for any claim construction between maintained and stored, right? We did not, and I want to make clear there's two separate prongs of this appeal. The first one, even under the Board's construction of maintaining as at least encompassing storing, there's no evidence, and the Board didn't make the proper factual findings that the ePIRS software was on the local device. As I said a few moments ago, it was on the server. Now, the second prong is the claim construction prong that Your Honor just mentioned. And the Board simply determined based on supposed admissions made by our cyber that maintaining means storing. But again, it still did not grapple with the central question of whether the ePIRS itself was stored on the local device. What the Board did instead, determined that laracy discloses storing financial information on the device, laracy discloses accessing that information on the device, and laracy discloses software that stores information locally. However, it did not combine the two, combine the software that stores information locally with the software that's on the actual device. And it could not because the TMS is on the server, and Apple did not challenge that. I'm sorry, what is on the server? The TMS, that's the software that actually performs the storing, updates, and synchronizes the accounts between all the devices. Counsel, are you contending there's some type of temporal requirement with regard to maintaining the ePIRS? There's not a particular temporal requirement. I don't believe we argued for that either to the Board or in this case. We did argue that maintaining means something more than simply storing. That's the second prong here, which the Board simply determined that they were the same thing. It picked two supposed admissions. The first one is electronic. When you said that you argued that maintaining means something different than storing, I thought we did talk about specifically that you didn't argue in terms of claim construction, that there was a difference between maintaining and storing. So there was not a formal request for a claim construction on that particular term. Our cyber proceeded under what it understood to be the plain meaning of maintaining that involves, frankly, maintenance, not simply storage. The Board never asked for a claim construction briefing, and so our cyber argued, okay, well, the only maintaining that's done in liracy is updating and synchronizing these balances and the financial information between the devices. When you say maintenance as opposed to storage, the term maintenance, I know it's close to maintaining, but what do you mean by maintenance in this context? That's a new concept, I think, that I hadn't seen in the briefs. Yeah, I don't believe that is in the briefs. I was trying to elucidate it, but certainly maintenance is not in the briefs. But what do you mean by that? I mean, when I think of maintaining, and I think that was our understanding below, is maintaining means keeping something in good repair, such as maintenance, in this case, keeping the accounts synchronized so that they have the updated information. Do you have any specification support for your proposed definition of maintaining? As we cited to, there's no explicit definition of what maintaining means. However, as we cited in our brief, there's discussions of maintaining a transaction log, and maintaining a log, I think, by its very terms, means updating that log as more and more transactions come in. And there's also maintaining a log with respect to the secure element and the configuration of it, which again, strongly implies, if not explicitly states, that you have to update that log as facts proceed, as further information comes in. Can I just ask you a question about what I think you began with. We've just been talking about maintaining versus store, and how maintain requires some, in your view, some sort of keeping up to date. But before that, you got to a point about how there might be information stored on the mobile device, but not software. And I think I heard you say that the board never really addressed that. Didn't the board address that on pages 18 and 19 of the appendix? I mean, certainly relying on some expert testimony. There is definitely software on the mobile device. That's not challenging. We're not challenging that. The question is whether that software is what's performing the actual storing, which in our view, it is not. Our view of the storage is done remotely by the server, the TMS server. What does the software, in your view, on the mobile device, what does it do? What it does is it reads the information that was provided to the device, and it uses that information to perform a transaction. So that information is transmitted to the mobile device, and the mobile device engages in operations based on that information, and then sends back some kind of feedback to the server. That's correct. Yeah, and that, you say, does not constitute, cannot be viewed as maintaining. Yeah, it is not maintaining, yes. I mean, it's also, it's not... Even for a short period of time. Necessary to complete the transaction. Right, and I think there's a bit of a disconnect, even in the board's decision. It's not necessarily the information that must be maintained, although it does practically have to be. It's the software that does the storing must be maintained on the local device. So if we're thinking of, say, a restaurant, the waiter who's delivering the meal must be at the table, which makes no sense. In this case, there's the diners at the table who are consuming the information that's provided, but the waiter himself is not at the table. He's delivering it and then returning back to the server. And I don't believe the board interacted with that. But during, I'm not sure I've completely followed the waiter analogy, but the waiter is certainly at the table at various points in the sequence of events leading to the completion of the meal. Right, but... And then, so, if the, I'm not sure the analogy really gets us very far, but that, the question, as I see it, is related to for how long a period of time, through one transaction or multiple transactions, that information is transmitted to and, I don't want to use the word maintained, but it's transmitted to and manipulated on the mobile device. And so it's for some discrete period of time that occurs on the mobile device, right? Yes, that occurs and that's why the, why we're not challenging that the information is stored on the mobile device. And, but, and the reason it's not maintained on the mobile device, give me exactly what your view is as to why it's stored there, but it's not maintained. It's not manipulated in a way that constitutes keeping it in good trim or what? I mean, it is not, that is not done on the mobile device. It is not updated. Well, what, again, applying the term maintaining to the particular actions that occur on the mobile device in this case, what is it that does not happen, that needs to happen, or would need to happen to constitute maintaining? What would need to happen is that the software that actually has the current status of the information, the nebulous information, however you want to pose it, that would have to exist on the mobile device. It does not. That's the EPRS software and that exists on a server. And it's not on the mobile device. And that's the central issue right here. Why don't you save your rebuttal time and we'll hear from the other side. Thank you. I'll reserve my seat. Good morning, your honors. May it please the court. Robin McBride on behalf of the intervener. I'd like to just pick up where we left off here about the claim requires maintaining and storing the software and the financial information on the local device. And the board found that laracy teaches both of those requirements. Specifically, they pointed to laracy at paragraphs 24, 46, and 91, where laracy explains that you can download software or computer code in the form of an application or an app. You can download that app onto the mobile device, which can be an iPhone or an Android phone. So that's a clear teaching that laracy downloads and stores the software on the mobile device. And then separately, laracy also says, in paragraphs 36 and 98 to 101, which the board cited to, it goes into detail about all the financial information that is transmitted and downloaded into the mobile device, including the detailed transaction information for the current transaction, as well as the customer's financial accounts, including their payment options, such as a credit account, a debit account, loyalty reward points. And this is all shown in figure 8B as well of laracy. I didn't want to interrupt you. You can finish that point. I had a question though. Oh yeah, go ahead. After you finish. Okay, the thing that has thrown me a bit off here is that we've been talking, and the briefs talk about information being either in the, stored or maintained, either in the mobile device or in the server. But the language of the claim is an electronic purse maintained locally in the mobile device. Now I understand we're dealing with software here and that therefore this is not a physical object in the sense that it would be if it were an actual purse. But I'm struggling with the notion that simply having information in the local device, does that necessarily mean that the electronic purse is in the mobile device? And if not, what is necessary to make the electronic purse be in the mobile device? That's a good question. So the electronic purse was the subject of the claim construction. And the electronic purse was construed as software that stores the electronic financial information in a local device. So there's really two things that need to be stored. One is software that has to be stored in the local device. And then two, is that you also have to have the financial information that is stored in the electronic device. So you're saying as long as you have software in the electronic device that stores financial information for some period of time, you've satisfied the electronic purse maintained requirement? Yes. And the electronic purse, to the extent that it is a piece of software that stays on the electronic device, is what is maintained on the electronic device, regardless of whether information comes and goes and comes and leaves instantaneously. Yes, I think the information, it's stored in two different places, to be clear. It's stored on this remote server, which is the transaction management system, 130. So it's stored there, and then it's also, it's downloaded, it's transmitted, downloaded, and stored on the local device as well. So it's stored in both places. And Laracy's says, it goes into detail how for each transaction you transmit this information. So it's the current information, it shows the current account balances for the user, that the user has in their credit account, in their debit account, so then the user can make an informed decision about how to settle up and pay for the transaction. And I'd also point out that there's some confusion about what maintaining means versus stored, and is there a difference? Stay for a minute on the distinction between the software and the information. The definition, the construction of ePERS requires that software, which has to be stored, maintained, at this point I don't care about the difference between those two, software has to be somehow resident for some period of time on the mobile device, and that software has to perform a particular function, namely storing financial information in the local device. I took it that Mr. Cowell's point is that the board never said that there was software on the mobile device, resident there for some period of time that performs that particular function, not doing transactions, whatever else that might mean, but the storing function. And where did the board say that Laracy does teach that? So this is at, I think, the board decision page is 18, 19, and 20. I'm looking at page 20 in particular, the board's talking about how Laracy discloses the mobile device that uses software to conduct the payment transactions. It explains how that software is downloaded onto the mobile device in the form of either computer code or an application or an app, and they point to Laracy, paragraphs 24, and I can tell you exactly what paragraph 24 says. This is at A1462, it's giving an example of Sam and Jane, but it says, Jane will access and use the payment system of the present invention by downloading and configuring an iPhone application or app configured to facilitate payment transactions pursuant to the present invention. So that's a clear teaching that is downloading the software, and then it goes into- What page was that again? That's A1462. Okay. And it goes, I think that's a clear teaching what there's additional teachings at paragraph 46. Right, but so far we're still at, I think what Mr. Powell would say, at a level of generality that's too high. Namely, so we've got downloadable software to perform, to facilitate payment transactions. And I think his point is, where does the board find that the facilitation created or enabled by that downloaded software includes the storage function? Inherently, or what? Well, it goes in, it explains- Or is that not necessary? Well, I think it does say that in paragraphs 98 through 101, this is at A1472, Laracy goes into detail how the financial information is transmitted and downloaded to the mobile device. It gives examples of how the data may include information about current account balances. And this is at A1472, paragraph 99, the second column. So that's actually the last sentence of that paragraph. It says the data may include information about- I'm sorry, what was the last page reference you gave? A1472? Yeah, and the end of paragraph 99. Oh, paragraph 99. 99, okay. Yes, the very last sentence of that paragraph, which is at the top of column two. It says the data that's transmitted may include information about current account balances, loyalty programs, discounts, marketing messages, or the like. And it talks about, in the following paragraph, it's depicted in A, B. It says in some embodiments, the display may include information about the status. And it also, it actually says here explicitly, it says in some embodiments, this is in paragraph 100, it says the payment account information is not stored in some embodiments. It can be- Wait, where in that paragraph are you looking? So I'm at line, there's no line number. So this is at paragraph 100, just below the middle of the paragraph. I see it, just towards the bottom, next to the last sentence. Yes. It says that in some embodiments, the actual payment account information is not stored in the mobile device. And in those embodiments, you can use some other arrangement. But for these other ones, it is stored in the mobile device. And it shows all the information that's stored. And if you go to figure eight B, which is at A1456, it gives an example of all the detailed transaction and account information. It's got what you owe for this particular transaction. It's got your credit account with the account number and the balance. It's got the debit account with the debit balance, the gift card and the gift card balance. And those paragraphs we just referred to in 99 and 100 says those are the current balances. It's current information. It says it's stored on the local device. That's the financial information. It also says you download and store the software. And I think in combination, that's substantial evidence to support the board's decision. And counsel, I think you would point to probably appendix pages 22 and 23 for where the board itself kind of walked through how stuff is stored on the mobile device. Would those be some of the pages you would look to? 22 and 23? Yes. Yes, they're talking about in the middle of A22, they're referring to the storing and maintaining the financial information. They point out how they argue that they refer to storing and maintaining interchangeably throughout their briefing. Their key argument was that LARISC only stores and maintains the information on the remote server and not on the local device. And the board's pointing out that it's actually doing it on both. Do you believe that we would need to agree that storing and maintaining means the same thing for you to get an affirmance? I think in this case, all of the evidence in the record supports the board's determination that there was no substantial or no real difference in meaning between storing and maintaining in the context of the claims here because the way it was brought up was RF Cyber injected this proposed construction using the word storing as part of their claim construction. And they never argued that storing meant something different than maintaining or vice versa. In fact, they did the opposite in their patent owner response. They refer to storing and maintaining interchangeably. If you look at the patent owner response at A253, there's a good example of this. I'm sorry, it's A252 at the very bottom, the last line. They say that in the LARISC system, electronic financial information related to a customer's accounts are stored and then in parentheses, they've said maintained, are stored, maintained in remote servers. That's one example, but their briefing is just replete with examples how they explain that LARISC doesn't store information locally, how it doesn't maintain information locally, and those terms are just used interchangeably. They never made an argument that maintaining meant something different than storing or that it had to have some temporal requirements, some duration. In fact, one of the APJs at the oral hearing specifically asked that question, and RF Cyber said there's nothing in the claim that requires a temporal requirement for storing or for maintaining. I'd also point to, if you just look at the claim language itself, it doesn't have any additional requirement that maintaining means doing it continuously or keeping it up to date. There's nothing in this fact that defines these two terms, and there's nothing in the prosecution history that would suggest they mean something different. So I think all of the intrinsic evidence supports the board's determination here, and it's also consistent with the arguments that were presented to the board. So just to kind of sum up, I don't know if you answered directly my question, though. Do you think that we have to agree that storing and maintaining mean the same thing for you to win? I think that's how the board decided the case. I think if you were even to disagree with the board and say storing just means storing it for a short time and maintaining has this additional requirement that it's maintained on an ongoing basis, I think Laracy does have a teaching that for every transaction, it's going to download the current account information, and so there is some ongoing downloading process going on there that's more than just storing it for an instant. So I think you could find that it's harmless error and affirm on that basis, if you were to agree that maintaining had this additional requirement. And I'd also point out in their patent owner response, they made a statement that Laracy always downloads the current information. Oh, this is at 8326. Okay. Go ahead. At the very top of that page, they stated that Laracy always downloads the current information before processing a transaction, and that's supported by statements from their own expert. Both experts stated that Laracy downloads the current account information before each transaction, so I think if you were to find that maintaining did require something more than storing, you could affirm on that basis as well. If there's no further questions, I'll yield the rest. Thank you.  So I think, Judge Toronto, I think you hit the issue quite on the head when the issue is whether the electronic purse itself is in the local device, and that's the dispute we have. And Mr. McBride, I think, spent a lot of time talking about how information was stored on the local device, downloaded to the local device, I think that's the last thing you said before you sat down. But that has nothing to do with whether the software that performs that storing, the ePurse electronic purse software, that has nothing to do with whether that is on the local device. And the only example I believe he gave was downloading an app. But downloading an app is meaningless unless that app itself is doing the storing. And there's no disclosure in Laracy that the app is doing the storing, because it is the TMS server. The board never found that there was an app doing the storing. There's nothing within 820 to 823 or so, which I believe Mr. McBride cited. That's all talking about consuming that information that is already stored. Well, what is your response to opposing counsels pointing us to Laracy always downloading the current information? Do you have a response to that, or? Yeah, I have a few responses to that. First, we don't disagree that the system as a whole downloads the information to the device. We believe the portion of the software, the only disclosed portion of the software that does that downloading is on a server and not the local device. And I believe Mr. McBride cited that as evidence that if you find storing and maintaining are not the same thing, you can affirm under harmless error. But I believe that would entail making factual findings that this court is not in the best position to do. And in that case, I think it may have to vacate and revamp the board. Now, was there, I guess this is what I want to ask you, and there may be some premises you want to correct. I take it that starting around page 18 for a few pages, the board says there is, in fact, software on the mobile device that performs functions that are part of the definition of the e-purse. And you're, I think, saying, maybe that's, assume that to be true, but not the crucial storing function. Where in your patent owner response did you make that distinction? As opposed to saying, all these functions in Laracy are being directed by the commands that reside in software on the server. Did you treat it all as a single unit, these functions, or segregate them into different functions and saying, well, maybe some are resident in code on the mobile device, but not this one. If you look at A259, there is the clear statement, to the extent Laracy discloses any software that stores financial information, that software is maintained on a server, not locally in the mobile device. I can't think of a way to say it clearer than that, that that was the distinction we were making. And we spent several pages following that, explaining the maintaining limitation as opposed to the storing limitation. And I would say, Mr. McBride said our briefing was replete with conflating, storing, and maintaining. I would disagree strongly on that. You can read A259 to 265, it's all about maintaining, not storing. And indeed, the board only cited the one particular, cited two particular instances, both of which we addressed strongly in our briefing. Board has no further questions. Okay, thank you. Thank you. Thanks to all counsel, cases submitted.